UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASHAWN SHERMILYON PARKER, | No.  2:25-cv-00394-TLN-SCR |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the undersigned recommends denying Plaintiff's motion for summary judgment, granting Defendant's cross-motion, and affirming the Commissioner's decision.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); *Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels[.]").

1

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on October 30, 2020, alleging a disability onset date of October 1, 2020.  Administrative Record ("AR") 21, ECF No. 7.  The applications were disapproved initially on December 15, 2020 and on reconsideration on January 26, 2021.  AR 21.  On August 12, 2021, ALJ Serena Hong presided over a telephonic hearing on Plaintiff's challenge to the disapprovals.  AR 39-70 (transcript).  Plaintiff testified at the hearing, as did Vocational Expert ("VE") Stephen Davis.  AR 39, 44, 62.

On October 27, 2021, ALJ Hong issued an unfavorable decision, finding Plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 21-30 (decision), 31-34 (exhibit list).  On August 9, 2022, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  AR 1-3 (decision), 5-6 (exhibit list).

Plaintiff challenged the denial in *Parker v. Commissioner of Social Security*, No. 2:22-cv-01648-DMC ("*Parker I*").  On December 4, 2023, Magistrate Judge Dennis Cota held that ALJ Hong had improperly discounted Plaintiff's subjective testimony by categorizing her treatment regimen as both conservative and effective.  AR 965-66.  Judge Cota remanded the matter for re-evaluation of Plaintiff's testimony.  AR 966, 968.

On September 12, 2024, ALJ Hong presided over a second telephonic hearing where both Plaintiff and VE Nicole Dupre testified.  AR 930-56 (transcript).  On December 6, 2024, ALJ Hong again found Plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, and Section 1614(a)(3)(A) of Title XVI of the Act.  AR 910-21 (decision), 922-29 (exhibit list).

Plaintiff filed this action on January 29, 2025.  ECF No. 1.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 9 (Plaintiff's summary judgment motion), 11 (Commissioner's summary judgment motion).  Plaintiff filed a reply brief on August 27, 2025.  ECF No. 12.

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1976, and accordingly was, at 43 years old, a younger individual

under the regulations as of the alleged disability onset date.  AR 919; *see* 20 C.F.R

§§ 404.1563(c), 416.963(c) (same).  Plaintiff has a GED, the equivalent of a high school

education; is certified as a nurse's assistant; and can communicate in English.  AR 266, 268.  She

worked as a district auditor from September 2014 to April 2016, a call center specialist from June

2016 to August 2018, an "F&B innovations" specialist from May 2019 to April 2020, and an

events specialist from November 2019 to February 2020.  AR 268.  Asserted conditions include

gout and severe patellofemoral compartment osteoarthritis.  AR 267.

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is

supported by substantial evidence and if the Commissioner applied the correct legal standards."

*Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'"  *Andrews v.*

*Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a

preponderance."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from

the record can constitute substantial evidence, only those 'reasonably drawn from the record' will

suffice."  *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court

nonetheless must review the record as a whole, "weighing both the evidence that supports and the

evidence that detracts from the [Commissioner's] conclusion."  *Desrosiers v. Secretary of HHS*,

846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The

court must consider both evidence that supports and evidence that detracts from the ALJ's

conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

4

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

Step four: Does the claimant's residual functional capacity [("RFC")] make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

In her latest decision, ALJ Hong made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2. The claimant has not engaged in substantial gainful activity since October 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bilateral knee osteoarthritis and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a),

5

except she can never climb ladders, ropes, or scaffolds or crawl; can occasionally perform other postural functions; can use a cane; and must avoid concentrated exposure to hazards.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 4, 1976 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 913-20.

## VI. ANALYSIS

### A. The ALJ Erred in Discrediting Subjective Testimony, But that Error Was Harmless

#### 1. Subjective Testimony

During the 2021 hearing, Plaintiff testified that her leg first started swelling in the Fall of 2020 while she was training for a merchandising job. AR 46. An Octboer 20, 2020 MRI revealed she had no cartilage in that leg. AR 46-47. The "training" at issue mostly consisted of stocking items on the shelves, which required a lot of bending, squatting, lifting, and turning. AR 47-48. The pain was bad enough that she completed just one day of physical labor and did not make it past training. AR 48. The job she had from February to April 2020, before the COVID-19 pandemic resulted in layoffs, involved mostly clerical work with some standing but very little lifting. AR 48-49, 942.

Plaintiff alleged in an October 2022 function report that she cannot sit or stand for more

6

than a few minutes at a time without unbearable pain around her knee joints.  AR 916, 1273.

During the 2024 hearing, Plaintiff testified that although she did work for the United States Postal Services ("USPS") from November 2022, she was limited to odd jobs rather than the full range of work associated with her position.  AR 939.  She worked until the week before her knee surgery in 2023, processing boxes and distributing mail to the drivers delivering it to each route that day, mostly while standing.  AR 939.  After the surgery, she was unable to work more than four hours per day or lift more than five pounds.  AR 940.  USPS could not find work for her that met those restrictions, so she was asked to resign about two weeks before the hearing.  AR 941.

Plaintiff asserted that because of her knees, she cannot sit for too long and can barely stand at all.  AR 943.  If she does sit for as little as ten minutes, she needs to walk around for five minutes to straighten her legs back out.  AR 945-46.  Despite that, she can only stand for ten minutes or walk for fifteen even with her cane, and she will not even do that much unless necessary on account of how hard it is.  AR 946-47.  Even going to the grocery store is enough to leave her in pain for hours.  AR 943.  Her 2023 surgery mostly keeps her right knee from rubbing as much as it used to, but the pain remains.  AR 943.  Plaintiff estimated she can lift up to ten pounds, provided she can do it with only one hand so the other is free for her cane.  AR 946-47.  The cane helps take some of the extra weight off her knees, but she has also fallen a few times over the years.  AR 948.  Aside from surgery on the right knee, she has had some physical therapy on the left, but it has had little effect and she is "kind of scared to go in for surgery."  AR 948.

Plaintiff also testified that her pain is constant without her medication, which in turn makes her shaky.  AR 944-45.  The pain makes her easily frustrated and interrupts her thought process, making it harder to answer questions or focus on anything.  AR 947.  It also keeps her from sleeping through the night, and from getting dressed or bathing without her daughter's help.  AR 948-49.  A typical day consists of her lying in bed and watching TV with her knees up, being visited rarely by friends.  AR 949.  At most, she goes out once a month, usually to sit at the park.  AR 950.

## 2. ALJ Holding

The ALJ acknowledged Plaintiff has osteoarthritis in her knees, for which she underwent the patellofemoral arthroplasty in her right knee in April 2023. AR 916. She also observed that Plaintiff's obesity would, under Social Security Ruling ("SSR") 19-2p, exacerbate the pain and postural limitations caused by such musculoskeletal issues. AR 916. The ALJ consequently limited Plaintiff's RFC to sedentary work, with postural limitations that would prevent Plaintiff from straining her knee. AR 916. She could never climb or crawl, and could only occasionally perform other postural functions. AR 917. The RFC also incorporates her reliance on a cane. AR 917.

The ALJ then explained, however, that she did not further limit Plaintiff's RFC because the medical evidence did not support doing so. AR 917. MRI and X-ray results from October 2020 to August 2021 showed only mild swelling in the right knee, no more than mild arthritis and cartilage loss in left, and intact ligaments. AR 917 (citing AR 817, 822, 886-893, 1484, 1571, 1736). As to Plaintiff's treatment history, she was offered a knee injection in October 2020 but refused it until July 2021. AR 917 (citing AR 369, 371-73, 417-20, 844-59). She then underwent right knee arthroplasty in April 2023, which improved her condition without negative side effects through 2024. AR 917 (citing AR 1573, 1581-82). Taken together, these parts of the medical record did not support the alleged limitations in walking or climbing. AR 918.

Plaintiff's evaluation of her pain for her doctors, as well as those doctors' observations, also did not reflect a more debilitating level of pain. AR 917-18 (citing AR 371-73, 420-23, 844-59, 1336, 1391, 1393, 1471). Of particular note was her treating doctors' opinion that Plaintiff could lift up to twenty pounds. AR 918 (citing AR 2136).

The ALJ also found Plaintiff's routine activities inconsistent with her subjective testimony. AR 918. She could drive and perform household tasks, including caring for a ten-year-old. AR 918 (citing AR 373, 1270-80). She also cooked for fun and made jewelry. AR 918 (citing AR 1507). Because the COVID-19 pandemic was what cost her one job in April 2020, it was not until April 2021 that her knee pain was what kept her from working. AR 918 (citing AR 379-80, 1346). She was able to walk several blocks in September 2022, and to walk blocks,

climb stairs, run short distances, and do housework and yardwork in April 2023.  AR 918 (citing AR 1443, 1475).  The housework and yardwork in particular suggest that she could lift more than the alleged ten-pound limit.  AR 918 (citing AR 2136).

### 3. Governing Law

Evaluating a claimant's subjective testimony is a two-step process.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  *Id.*  Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ can only reject the claimant's testimony about the severity of such symptoms if there are "'specific, clear and convincing reasons for doing so.'"  *Id.* at 1014-15 (internal citations omitted); *see also Smartt v. Kijakazi*, 53 F.4 489, 494 (9th Cir. 2022) (applying this standard even "[w]hen objective medical evidence is inconsistent with a claimant's subjective testimony").

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing."  *Thomas*, 278 F.3d at 958.

Evaluating the "intensity and persistence" of the symptoms of an impairment will involve considering all available evidence, including "medical history, the medical signs and laboratory findings, and statements about how…symptoms affect" the plaintiff.  20 C.F.R. § 404.1529(a). Relevant factors include:

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms; […]

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; [and]

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.);

20 C.F.R. § 404.1529(c). As to the fourth and fifth factors (i.e., "iv" and "v" directly above), the Ninth Circuit permits ALJs to consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (quoting *Fair*, 885 F.2d at 603); *see also Plummer v. Berryhill*, Case No. 2:16-cv-00753-AC, 2017 WL 2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that "failure to pursue recommended treatment discredited…[plaintiff's] subjective testimony.").

### 4. The Errors in Analyzing Subjective Testimony Do Not Merit Remand

Plaintiff argues that every reason the ALJ provided for discounting her subjective testimony includes some form of error. First, although Plaintiff concedes that October 2020 findings were mild, she argues that subsequent medical entries included various abnormal findings in her knees and gait. ECF No. 9 at 13 (citing AR 372, 422-423, 683-684, 715, 845, 1410, 1412, 1415, 1419, 1484, 1497, 1508, 1540). Plaintiff further argues that the ALJ misrepresented the nature of the cartilage loss in the April 2022 MRI. ECF No. 9 at 13 (citing AR 971, 1484). Overall, she believes the ALJ improperly cherry-picked normal medical findings to discount subjective testimony despite other evidence supporting it. ECF No. 9 at 13-14 (citing *Williams v. Colvin*, Case No. 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015)).

Plaintiff then asserts that the ALJ miscategorized her course of treatment as conservative, despite including steroid injections, pain medication, and eventually surgery. ECF No. 9 at 15-16 (citing *Bostock v. Berryhill*, C.D. Cal. 2:18-cv-02565-JDE, 2018 WL 5906174, at *4 (C.D. Cal. Nov. 9, 2018). She also accuses the ALJ of misrepresenting the nature of the daily activities used to discount her testimony, like childcare and housework. ECF No. 9 at 16-17 (citing *Garrison*, 759 F.3d at 1016; *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995)).

10

As Defendants note, the RFC already limits Plaintiff to sedentary work with a variety of postural limitations, like a categorical prohibition on climbing and crawling. ECF No. 11 at 4; AR 915. By definition, sedentary work requires only occasional walking or standing, totaling no more than two hours in an eight-hour workday. SSR 83-10. The RFC even allows Plaintiff to use a cane to assist with said standing and walking. AR 915. The question becomes to what extent the subjective testimony should have been further credited, specifically as to why Plaintiff cannot sit for the majority of a workday.

Some of Plaintiff's arguments have merit. For example, an ALJ should not penalize claimants "for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An ALJ can cite a claimant's daily routine to the extent that it is inconsistent with the degree of disability that plaintiff alleges. *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment). In other words, an ALJ may rely on the fact that a plaintiff "engages in numerous daily activities involving skills that could be transferred to the workplace" only if the ALJ "mak[es] specific findings relating to those activities." *Burch*, 400 F.3d at 680-81. Aside from holding that yardwork requires lifting more than ten pounds, the ALJ completely fails to explain how activities like childcare, walking short distances, and making jewelry translate to a broader RFC than Plaintiff's testimony would allow. *See* AR 918. Thus, the undersigned believes that the ALJ erred.

As to the medical record, the cited MRI results showed cartilage loss at the median patellar ridge and lateral patellar facet, yet the ALJ's decision only acknowledged the former. AR 971, 1484. Defendant notes that under the substantial evidence standard, if the record supports more than one interpretation thereof, it is the ALJ's interpretation that must be upheld. ECF No. 11 at 5-6 (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). While this standard does treat the ALJ's holding with some deference, that deference does not extend to meaningful omissions of what a cited medical report says.

The ALJ's summary of Plaintiff's treatment history, however, sufficiently supports the

11

decision to discount her subjective pain testimony.  Plaintiff argues that the treatment modalities reflected in the record were not conservative, and that the April 2023 knee replacement surgery underscores how ineffective prior treatment modalities had been.  ECF No. 9 at 15-16.  Plaintiff further argues that even if that surgery was effective, this does not preclude at least a closed period of disability from the alleged onset date to April 2023.  ECF No. 9 at 14 (citing *Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021)).  The ALJ also noted, however, that Plaintiff was offered injections until October 2020 but refused them until July 2021.  ECF No. 11 at 4; AR 917 (citing AR 369, 371-73, 417-20, 844-59).  An ALJ may discount subjective testimony based on "an unexplained, or inadequately explained, failure to ... follow a prescribed course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (quoting *Fair*, 885 F.2d at 603).  The only reason Plaintiff provides for rejecting that treatment, in her 2021 testimony and her opening brief (but not her 2024 testimony), is that she was afraid of needles in her knee.  ECF No. 9 at 5; AR 53-54.  An ALJ may refuse to find such fears a valid reason for refusing treatment when "there is no medical evidence that her resistance is attributable to her … impairment rather than her own personal preference." *Smith v. Colvin*, Civ. No. 3:15-cv-00267-MC, 2016 WL 1065816 at *6 (D. Or. Mar. 15, 2016).

ALJ Hong's analysis of the treatment history renders harmless any error in the remainder of her analysis.  The operative question "is not whether the ALJ would have made a different decision absent any error … it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008).  Multiple reasons for a particular conclusion can render an error in one harmless because the others provide "a basis for the court to review the ALJ's decision[.]" *Id.* at 1163; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence[.]'") (internal citations omitted).  If an ALJ provides multiple "record-supported reasons for discrediting the claimant's testimony," an error in any one reason is harmless on its own. *Stout*, 454 F.3d at 1055 (citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir.2004)).  In other words, Plaintiff's refusal to

accept injections at the beginning of the relevant period and her positive response to surgery are sufficient to uphold the ALJ's decision to discount testimony.

Plaintiff has failed to demonstrate that the treatment of her testimony merits remand for further administrative proceedings.

### VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for summary judgment (ECF No. 9), be DENIED;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 11) be GRANTED; and

3.  The Clerk of the Court be directed to enter judgment in favor of the Commissioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, either party may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 11, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE